**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **TADA VENTURES, LLC** | § | **Case No. 19-31845-H2** |
| **Debtor.** | § | **Chapter 11** |

**ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION**
(Nos. ___)

CAME ON FOR CONSIDERATION on December 9, 2019, the Amended Plan of Reorganization of TADA Ventures, LLC (No. 58) filed on November 21, 2019 ("Plan") pursuant to 11 U.S.C. § 1129.  After hearing the evidence, the Court finds the following:

1.      The Disclosure Statement, the Plan, and Order Approving the Disclosure Statement (docket no. 59) were served to all creditors and parties in interest with ballots conforming to Official Form 14 being transmitted to those creditors and interested parties.

2.      Notice of the hearing on confirmation of the Plan and deadlines regarding the return of ballots, serving and filing written objections to the Plan has been given in accordance with Title 11, United States Bankruptcy Code, the Order of this Court (Docket No. 59), and the Federal and Local Rules of Bankruptcy Procedure.

**IT IS ORDERED:** [1]

A.      The Amended Plan (Docket No. 58), attached hereto as Exhibit "A," and incorporated by reference, complies with all applicable provisions of the Bankruptcy Code and applicable Bankruptcy Rules relating to confirmation and is hereby CONFIRMED under 11 U.S.C. § 1129(a).

B.      Section 5.1 of the TADA Ventures, LLC Plan is hereby amended to replace all of section 5.1. with the following:

Holders of Claims that are unimpaired are deemed to have accepted the proposed Amended Plan and are not entitled to Vote on the Plan.  The following Classes of Claims are not impaired under the Plan and are deemed to accept the Plan:

Classes 1, 2, and 3.  Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor shall pay all holders of Allowed Claims in Classes 1, 2, and 3 on or before the Effective Date  an amount equal to such holder's Allowed Secured Claim, including, to the extent provided in the agreement(s) between the Debtor and such holder, (i) interest (including any default interest provided under such agreements) from and after the Petition Date and (ii) other costs, charges and

---

[1] Unless defined herein, capitalized terms as used herein shall have the meaning ascribed to such terms in the Plan.

fees (including attorneys' fees). Notwithstanding anything to the contrary contained in the Plan or this Order, all such holders shall retain all their liens on the reorganized Debtor's property in the current lien priority to secure repayment of amounts to be paid under the Plan, and no such holder shall be required to release its lien prior to indefeasible and full payment of its Allowed Secured Claim as provided herein. All other terms of any obligations existing between such holders and the Debtor (as reorganized) shall remain in full force and effect except as modified by this Plan.

C.     Debtor is authorized to sell the Katy Commerce Center ("KCC") [1773 Westborough Dr., Katy, Texas, 77449 with the legal description Res A-3 Blk 1 Westborugh Business Park to Reveille Capital Property Fund or its assignee ("Buyer") for $2,900,000.00 or greater amount sufficient to pay at closing, all Allowed Claims in Classes 1, 2, and 3. Debtor is authorized to pay from the sale the commissions owed to brokers, agents, and other costs and fees necessary to close the sale. The sale of the Katy Commerce Center shall be made free and clear of all liens, claims, interests, and encumbrances, aside from those held by ad valorem tax entities not paid at closing. Upon full and indefeasible payment of their Allowed Secured Claim as provided in the prior paragraph of this Order, ECapital Loan Fund II, LP (successor to Bayview Loan Servicing LLC), the Small Business Administration, and Propel Financial Services release KCC from any liens securing their Allowed Secured Claim. In the event the sale does not close by December 31, 2019, the sale shall not be made free and clear of the 2020 ad valorem tax liens.

D.     In accordance with 11 U.S.C. § 1142, the Debtor is authorized and directed without the need for any further approval to immediately take any action necessary or appropriate to implement, effectuate, and consummate the Plan and any transactions contemplated thereby or by this Order in accordance with their respective terms.

E.     Debtor shall pay the remainder of its post-petition quarterly fees within thirty (30) days from the date of this Order and shall timely pay post-petition quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Court closes this Chapter 11 case. After confirmation, the Debtor shall file with the Bankruptcy Court a monthly operating report until this Chapter 11 case is closed.

F.     Notwithstanding anything to the contrary in the Plan or this Order, nothing in the Plan nor this Order: (1) discharges the Debtor, Reorganized Debtor, or any other person of any claim or other liability, or (2) enjoins any right of setoff or recoupment.

**SIGNED this ___ day of _____, 2019.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

"EXHIBIT A"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **TADA VENTURES, LLC** | § | **Case No. 19-31845-H2** |
| Debtor. | § | **Chapter 11** |

**AMENDED PLAN OF REORGANIZATION**
**AND AMENDED DISCLOSURE STATEMENT**

THIS COMBINED AMENDED DISCLOSURE STATEMENT AND AMENDED PLAN OF REORGANIZATION IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TADA VENTURES , LLC ENTITLED TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY TADA VENTURES , LLC AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN.  THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE CONCERNING THE PLAN.  ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE DISCLOSURE STATEMENT AND PLAN CAREFULLY.

TADA VENTURES, LLC'S COMBINED AMENDED DISCLOSURE STATEMENT AND AMENDED PLAN OF REORGANIZATION HAVE BEEN SET FOR A FINAL HEARING ON APPROVAL OF THE DISCLOSURE STATEMENT AND A HEARING ON CONFIRMATION OF THE PLAN OF REORGANIZATION ON _____, 2019 AT ____ A.M., IN COURTROOM 401, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002.

CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THE AMENDED PLAN AND TO RETURN THE COMPLETED BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT IN THE ACCOMPANYING ENVELOPE ADDRESSED TO CORRAL TRAN SINGH, LLP ATTN: SUSAN TRAN ADAMS, 1010 LAMAR STREET, SUITE 1160, HOUSTON, TEXAS, 77002, NOT LATER THAN _____, 2019.  VOTES WILL BE TABULATED WITH RESPECT TO THE DEBTOR'S PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN, TO THE EXTENT THE DEBTOR DOES NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF HIS PLAN, THE PLAN MAY BE WITHDRAWN.

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 4

1.1.   General Information ............................................................................................... 4

1.2.   Frequently Asked Questions .................................................................................. 5

    1.2.1.   What is Chapter 11 Bankruptcy? ................................................................ 5

    1.2.2   Has the Bankruptcy Court approved this Disclosure Statement? .............. 5

    1.2.3.   How do I know how my Claim or Interest is classified? ........................... 5

    1.2.4.   How does the Plan get confirmed? ............................................................ 5

    1.2.5.   When is the deadline to return my ballot? ................................................ 6

    1.2.6.   When and where is the hearing to confirm the Plan? ................................ 6

    1.2.7.   When is the deadline to file an objection to confirmation of the Plan? .... 6

II. BACKGROUND ............................................................................................................. 6

2.1.   History of the Debtor & Events Leading to Chapter 11 Filing. ............................ 6

2.2.   Management of the Debtor Before and During the Bankruptcy. ........................... 7

2.3.   Significant Events During the Bankruptcy Case. .................................................. 7

2.4.   Significant Events During the Chapter 11 .......................................................... 8

2.5.   The Absolute Priority Rule. ................................................................................... 8

2.6.   TADA 's Assets ...................................................................................................... 8

2.7.   Liabilities and Claims against TADA. .................................................................. 9

    2.7.1.   Secured Claims. ......................................................................................... 9

    2.7.2.   Unsecured Priority Claims. ..................................................................... 10

    2.7.3.   General Unsecured Claims. ..................................................................... 10

2.8.   Projected Recovery of Avoidable Transfers and Other Claims ......................... 10

2.9.   Claim Objections. ................................................................................................ 10

III. PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ........................................................................................................................ 10

3.1.   Definitions. .......................................................................................................... 10

3.2.   Unclassified Claims. ............................................................................................ 16

    3.2.1   Administrative Claims. ............................................................................ 16

    3.2.2.   Classes of Claims and Equity Interests. ................................................. 17

IV.   IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES ...... 17

4.1.   Impaired Classes entitled to vote. ....................................................................... 17

    4.1.1   Classes 4–Unsecured Priority Claims .................................................... 18

    4.1.2.   Classes 5 – General Unsecured Claims ................................................. 18

4.2.   Unimpaired Classes & Classes not entitled to vote ............................................ 18

4.3.    Claim Controversies. ................................................................................. 18

V.      TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS ................................... 18

5.1.    Treatment of Unimpaired Classes of Claims. ................................................ 18

5.2.    Treatment of Impaired Classes of Claims. .................................................... 18

VI.     MEANS OF IMPLEMENTATION & RISKS ASSOCIATED WITH PLAN ................ 19

6.1.    Source of Payments. .................................................................................... 19

6.2.    Post-confirmation Management. .................................................................. 19

6.3.    Risk Factors. ............................................................................................... 19

6.4.    Tax Consequences of Plan. .......................................................................... 19

    6.4.1.    Taxation Generally. ............................................................................ 19

VII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................... 20

VIII.   CAUSES OF ACTION .......................................................................................... 20

8.1.    Preferences. ................................................................................................. 20

8.2.    Fraudulent Transfers. .................................................................................. 20

IX.     CONFIRMATION REQUIREMENTS AND PROCEDURES ....................................... 20

X.      VOTING PROCEDURES ....................................................................................... 23

10.1    Ballots and Deadline to Vote. ...................................................................... 23

10.2.   Creditors Entitled to Vote. ........................................................................... 23

10.3.   Vote Required for Accepting Classes. ........................................................... 24

10.4.   Cramdown and Withdrawal of the Plan. ....................................................... 24

XI.     EFFECT OF CONFIRMATION OF THE PLAN ....................................................... 24

11.1.   Discharge of Debtor, Injunction, and Vesting of Property of the Estate. ....... 24

11.2.   Modification of Plan. ................................................................................... 25

11.3.   Final Decree. .............................................................................................. 25

11.4.   Legally Binding Effect. ................................................................................ 25

11.5.   Limited Protection of Certain Parties. ......................................................... 25

11.6.   Anti-Discrimination Provisions of Bankruptcy Code. .................................... 26

11.7.   Preservation of Claims and Rights. .............................................................. 26

11.8.   Retention of Jurisdiction by Bankruptcy Court. ............................................ 26

XII.    CONFIRMATION OF THE PLAN. .......................................................................... 26

12.1    Confirmation Hearing. ................................................................................ 26

12.2.   Statutory Requirements for Confirmation of the Plan. .................................. 27

XIII.   CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS,
        AND PROCEDURES FOR ASSERTING CLAIMS ................................................. 28

XIV.    CRAM DOWN. ..................................................................................................... 30

XV.    GENERAL PROVISIONS ........................................................................... 31

15.1.    Bar Date and Objections to Administrative Claims. ..................................... 31

15.2.    Professional Claims. ..................................................................................... 31

15.3.    United States Trustee Fees. ........................................................................... 31

15.4.    Amendment of the Plan. ................................................................................ 31

15.5.    Reservation of Claims. .................................................................................. 32

15.6.    Calculation of Dates. ..................................................................................... 32

15.7.    Governing Law. ............................................................................................. 32

15.8.    Conflict. ......................................................................................................... 32

15.9.    Setoffs. ........................................................................................................... 32

15.10.    Alternative Means to Confirmation. ............................................................. 32

15.11.    Alternative Plans of Reorganization. ........................................................... 32

15.12.    Liquidation under Chapter 7. ........................................................................ 33

## I.  INTRODUCTION

### 1.1.    General Information

This is the amended disclosure statement (the "Disclosure Statement") under section 1125 of the Bankruptcy Code in the chapter 11 case of TADA Ventures , LLC (hereinafter "TADA "), Debtor and Debtor-in-Possession (the "Debtor").  This amended Disclosure Statement contains information about the Debtor and includes the Chapter 11 Plan of Reorganization (the "Plan") of the Debtor.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

This Disclosure Statement describes:
- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why TADA  believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the entire document.  This document is a combined Disclosure Statement and Plan, which, if confirmed, establish your rights.  This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims and

Equity Interests under the Plan.  It is submitted as an aid and supplement to your review to the Plan and to explain the terms of the Plan.  If any questions arise you are urged to contact counsel for the Debtor.

## 1.2.    Frequently Asked Questions

### 1.2.1.  What is Chapter 11 Bankruptcy?

Financially distressed companies reorganize their debts or liquidate their assets under Chapter 11 of the United States Bankruptcy Code.  Commencement of a case under Chapter 11 creates an "estate" which contains all legal and equitable interest of the debtor as of the date of filing.  During a Chapter 11 bankruptcy case, the debtor remains in possession of its assets unless the Court orders appointment of a trustee; in this case, no trustee has been appointed.

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.2.2   Has the Bankruptcy Court approved this Disclosure Statement?

No.  On the _____th of _____, 2019, the Bankruptcy Court will consider whether this Disclosure Statement contains adequate information.  "Adequate information" means information of a kind, and in sufficient detail, as far as practicable, considering the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a hypothetical investor of holders of claims or interests to make an informed decision of whether to vote to accept or reject the Plan.  The Bankruptcy Court's approval of this Disclosure Statement is not an endorsement of any of the representations contained in the Disclosure Statement or the Plan.

### 1.2.3.  How do I know how my Claim or Interest is classified?

In order to determine the classification of your Claim or Interest, you must determine the nature of your Claim or Interest.  Under the Plan, Claims and Interests are classified into a series of classes and the relevant articles and sections of the Disclosure Statement and Plan disclose the treatment that each class of Claims or Interests will receive if the Plan is confirmed.

### 1.2.4.  How does the Plan get confirmed?

Under the Bankruptcy Code, confirmation of the Plan requires at least one class of impaired Claims or Interests vote to accept the Plan.  Acceptance by a Class of claims or interests mean that at least two-thirds in the total dollar amount and more than one-half in number of the allowed Claims or Interests actually voting in the class vote in favor of the Plan.  Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims/interests.  Besides acceptance of the Plan by each class of impaired creditors or interests, a bankruptcy court must also find that the Plan meets a number of statutory requirements provided by the Bankruptcy Code before the plan is confirmed.  These requirements and statutory tests are designed to protect the interests of the holders of the impaired claims or interests who do not vote to accept the plan but who will be bound by the Plan's provisions if the Plan is confirmed by the

Bankruptcy Court.  If one or more classes vote to reject the Plan, the Debtor may still request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.  In order to confirm a plan not accepted by all classes, the plan proponent must demonstrate that the plan does not discriminate unfairly, is fair and equitable with respect to each class of claims or interests that is impaired under and that has not accepted the plan.

### 1.2.5.   When is the deadline to return my ballot?

The Bankruptcy Court has directed that your ballot must be received by 5:00 p.m. CST on _____, 2019 and returned in the enclosed envelope to Corral Tran Singh, LLP, ATTN: Susan Tran Adams, 1010 Lamar Street, Suite 1160, Houston, Texas 77002.

### 1.2.6.   When and where is the hearing to confirm the Plan?

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, 2019 at _____ ____.m, in courtroom 400, at 515 Rusk, Houston, Texas, 77002 in front of the Honorable Judge David R. Jones.

### 1.2.7.   When is the deadline to file an objection to confirmation of the Plan?

Objections to confirmation of the Plan must be filed with the Court and served upon Corral Tran Singh, LLP, ATTN: Susan Tran Adams, 1010 Lamar Street, Suite 1160, Houston, Texas 77002 by 5:00 p.m. CST on _____, 2019.

## II.  BACKGROUND

### 2.1.   History of the Debtor & Events Leading to Chapter 11 Filing.

TADA Ventures , LLC ("TADA") is a limited liability company incorporated in November 23, 2004.  TADA's sole managers are Jean and Earl Stout ("Stout") who have managed the day to day affairs since inception.  The Stouts are also the only employees and equity interest holders of TADA.  TADA owns and operates a commercial building, known as the Katy Commerce Center ("KCC") which is a two-story building with over 13,000 square feet of office space and an adjoining warehouse of 12,000 square feet.

TADA was formed with the intention of encouraging growth of small businesses that required office space for marketing and sales meetings and a warehouse for product storage.  The inspiration for TADA stemmed from the Stout's prior modular furniture business where manufactured in South America but designed and distributed in the United States which proved difficult logistically for storage and distribution.  Because the Stouts were unable to find suitable office and warehouse space to serve their own small business needs, the Stouts formed TADA to encourage growth of other small businesses with similar marketing and logistical needs.

TADA was very profitable in the early 2000s due to the dot com boom and economic growth garnering nearly three million dollars, however, following the economic decline in the late

2000s TADA's revenues plummeted to less than one million annually. TADA sought bankruptcy relief in 2010 in the Southern District of Texas, Houston Division, case number 11-31936. TADA's plan was confirmed on December 16, 2011. The source of funding for TADA's plan payments was its income from its continued operations and the Debtor refinanced its liabilities with Lehman Brothers and Community Bank/Small Business Administration on a fixed thirty year and twenty year payment plans, respectively.

Although TADA was generating income post-confirmation, TADA loss several large tenants and fell behind its ad valorem tax liabilities and entered into ad valorem tax financing in order to meet its obligations. Early in 2019, TADA received a notice of acceleration from Bayview Loan Servicing due to late and non-payment of ad valorem taxes. TADA also received a notice of acceleration from the Small Business Administration and TADA eventually sought bankruptcy relief on April 1, 2019.

TADA's sole tenant is LANs of Texas, Inc. an entity owned by the Stouts, that provides virtual and executive offices and logistics support. As part of the lease agreement, LANs of Texas, Inc. provides a monthly rental payment and utilities of KCC.

Below are photos of the exterior of KCC and its warehouse and its floor plans:





## 2.2.    Management of the Debtor Before and During the Bankruptcy.

TADA has been managed by its sole principals Jean and Earl Stout and have continued to manage its day to day affairs during the pendency of this bankruptcy case.

## 2.3.    Significant Events During the Bankruptcy Case.

TADA filed its petition under Chapter 11 on April 1, 2019.

**2.4.    Significant Events During the Chapter 11**

On April 1, 2019, TADA filed its Application to Employ Corral Tran Singh, LLP as Counsel for the Debtor pursuant to 11 U.S.C. § 327(a).  Employment of Corral Tran Singh, LLP was authorized on April 10, 2019.  TADA  filed an Emergency Motion for (I) Interim Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c), (II) Granting Adequate Protection for the Use of Cash Collateral and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to the Use of Cash Collateral on April 1, 2019, of which interim use of Cash Collateral was granted on April 4, 2019 and final use of Cash Collateral was granted through February 28, 2020 (*see* Docket nos. 13 and 42).

**2.5.    The Absolute Priority Rule.**

The "absolute priority rule" is the rule that states that the holder of any claim or interest that is junior to the claims of an impaired unsecured class of creditors will not receive or retain under the plan on account of their junior claim or interest any property (in this case, the ownership of the Debtor) if the unsecured class of creditors oppose the Plan.  Pursuant to the liquidation analysis, the unsecured creditors would receive very little if this bankruptcy proceeding was converted to a Chapter 7 proceeding, but in this Chapter 11 proceeding, they will be receiving100% of payment of their claims through TADA 's income from future operations.  Attached hereto as **Exhibit 1** is a liquidation analysis which analyzes the potential recovery for general unsecured creditors.

**2.6.    TADA 's Assets**

TADA filed its Schedules on April 1, 2019 which are hereby incorporated by reference to this Disclosure Statement and Chapter 11 Plan.  Complete copies of the schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate on the Filing Date, its estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value (per schedules) | Amount of Debt Secured by Liens Against this Asset[1] | Value Available to Estate[2] |
|---|---|---|---|
| Katy Commerce Center | $3,500,000.00 | $2,370,628.50 | $1,129,371.50 |
| Checking account | $3,543.00 | $0.00 | $3,543.00 |
| Escrow checking account | $119.88 | $0.00 | $119.88 |

---

[1] Per Proofs of Claim.
[2] Not assuming liquidating values.

AMENDED DISCLOSURE STATEMENT & AMENDED PLAN
BY TADA VENTURES , LLC
CASE NO 19-31845-H2-11

| Description of Asset | Estimated Fair Market Value (per schedules) | Amount of Debt Secured by Liens Against this Asset[1] | Value Available to Estate[2] |
|---|---|---|---|
| Phone systems | $9,000.00 | $0.00 | $9,000.00 |
| Security system | $2,143.18 | $0.00 | $2,143.18 |
| Computers | $8,900.00 | $100.00 | $8,900.00 |
| TOTAL | | | $1,144,277.56 |

**2.7.    Liabilities and Claims against TADA.**

**2.7.1.    Secured Claims.**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following chart lists all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following table sets forth the potential secured claims in TADA 's case:

| Secured Claim | Scheduled Claim | Filed Claim |
|---|---|---|
| ECapital Loan Fund II, LP (successor to Bayview Loan Servicing, LLC) | $1,168,288.30 | $1,389,327.39 |
| Small Business Administration | $837,844.73 | $870,167.07 |
| Propel Financial Services, LLC | $52,867.31 | $51,354.17 |
| Harris County et al | | $51,008.44 |
| Weston Municipal Utility District | | $8,771.43 |

### 2.7.2. Unsecured Priority Claims.

TADA scheduled an unsecured priority claim of $500.00 for past wages to Jean and Earl Stout.

### 2.7.3. General Unsecured Claims.

TADA scheduled a general unsecured claim of $277,845.39 to Jean and Earl Stout for member loans.

## 2.8. Projected Recovery of Avoidable Transfers and Other Claims

The Debtor is unaware of any avoidable transfers or other Chapter 5 actions.

## 2.9. Claim Objections.

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

# III. PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

## 3.1. Definitions.

### 3.1.1. Administrative Claim.
Any cost of expense of administration of the Chapter 11 case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including but not limited to, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries, or commissions for services rendered after the commence of the Chapter 11 case, certain taxes, fines, and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate. With respect to Administrative Claims allowed pursuant to sections 503(b)(2)-(b)(9), there shall be an Administrative Claim against the Debtor only to the extent upon entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

### 3.1.2. Administrative Claim Bar Date.
Aside from quarterly United States Trustee fees and Professional Fee claims, applications for the allowance of an Administrative Claim shall be made twenty (20) days after the Effective Date unless otherwise provided by a Final Order.

### 3.1.3. Allowed Administrative Claim.

An Administrative Claim to the extent it is or becomes an Allowed Claim.

### 3.1.4.   Allowed Amount.
The amount of an Allowed Claim.

### 3.1.5.   Allowed Claim.
An Allowed Claim is any Claim which has been
(1) scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and
(a) not scheduled as disputed, contingent, or unliquidated,
(b) as to which no Proof of Claim has been filed, and
(c) where no objection to such scheduled Claim has been filed;
(2) where a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; or
(3) a Claim allowed by a Final Order.

### 3.1.6.   Allowed General Unsecured Claim.
A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.7.   Allowed Priority Non-Tax Claim.
A Priority Non-Tax Claim to the extent it is or becomes an Allowed Claim.

### 3.1.8.   Allowed Priority Tax Claim.
Any Claim, to the extent such Claim is an Allowed Claim, and entitled to priority per section 507(a)(8) of the Bankruptcy Code.

### 3.1.9.   Allowed Secured Claim.
A Secured Claim to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not avoided pursuant to the Bankruptcy Code.

### 3.1.10. Allowed Subordinated Claim.
An Subordinated Claim to the extent it is or becomes an Allowed Claim.

### 3.1.11. Allowed Unsecured Claim.
An Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.12. Avoidance Action.
Any and all rights, claims, causes of action, arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, or 724 of the Bankruptcy Code.

### 3.1.13. Bankruptcy Code.
Title 11 of the United States Code as effective on the Confirmation Date.

### 3.1.14. Bankruptcy Court.
The United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over this Chapter 11 case, or any appellate or other court that is competent to exercise jurisdiction over confirmation of this Plan.

### 3.1.15. Bar Date.
August 12, 2019.

### 3.1.16. Cash.
United States dollars.

### 3.1.17. Cause of Action.
Any Claim or cause of action, legal or equitable, whether arising under contract or tort, federal or state law, including Avoidance Actions, now owned or after acquired by the Debtor, whether such Claim or cause of action is commenced prior to or after the Petition Date.

### 3.1.18. Chapter 11 Case.
Case number 19-31845-H2 filed under Chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

### 3.1.19. Claim.
Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

### 3.1.20. Claimant.
Any person or entity asserting a Claim against the Debtor, its property, or its Estate.

### 3.1.21. Collateral.
Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Court or otherwise invalid under the Bankruptcy Code or applicable state law.

### 3.1.22. Confirmation Date.
The date upon which the Bankruptcy Court enters the Confirmation Order.

### 3.1.23. Confirmation Hearing.
The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

### 3.1.24. Confirmation Order.
The Order of the Bankruptcy Court approving and confirming the Chapter 11 Plan in accordance with the Bankruptcy Code.

### 3.1.25. Creditor.

Any person or entity that holds a Claim against the Debtor that arose or is deemed to have arisen on or prior to the Petition Date, including an Allowed Claim against the Debtor's Estate of any kind as provided by sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### 3.1.26. Debtor.
The Debtor is TADA Ventures, LLC.

### 3.1.27. Debtor in Possession.
The Debtor in its capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### 3.1.28. Deficiency Claim.
A General Unsecured Claim to the extent that the amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with sections 506(a) of the Bankruptcy Code.

### 3.1.29. Disclosure Statement.
The Disclosure Statement with respect to this Plan, including all exhibits and schedules attached, filed by the Debtor and approved or conditionally approved by the Court pursuant to § 1125 of the Bankruptcy Code, as may be amended or supplemented.

### 3.1.30. Disputed Claim.
A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled, or otherwise resolved by Final Order.

### 3.1.31. Distribution.
The Cash or other property required by the Plan to be distributed to the holders of Allowed Claims.

### 3.1.32. Distribution Date.
The date on which distributions are made pursuant to the terms of the Plan to Holders of Allowed Claims.

### 3.1.33. Effective Date.
The earlier of 90 days following the entry of the Confirmation Order or the closing date of the sale of the Katy Commerce Center.

### 3.1.34. Equity Interest or Interest.
Equity Interest means a share in a corporation, interest of a limited partner in a limited partnership; or warrant or right, other than right to convert, to purchase, sell, or subscribe to a share, security, or interest of a corporation or limited partnership.

### 3.1.35. Equity Interest Holder or Interest Holder.
A holder of an equity security or equity interest of the Debtor.

### 3.1.36. Estate.

The estate created upon the filing of the Chapter 11 case pursuant to section 541 of the Bankruptcy Code, along with all rights, claims, and interests of the Debtor that arose prior to the Petition Date.

### 3.1.37. Final Order.

An order or judgment which has not been reversed, vacated, or stayed and as to which the time to appeal or move for new trial or rehearing has expired.

### 3.1.38. General Unsecured Claim.

A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

### 3.1.39. Governmental Unit.

The term "Governmental Unit" shall have the same meaning as provided in section 101(27) of the Bankruptcy Code.

### 3.1.40. Interest Holder.

Any holder or owner of an Equity Interest.

### 3.1.41. Katy Commerce Center.

Debtor's real estate located at 1773 Westborough Dr., Katy, 77449.

### 3.1.42. Lien.

A charge against or interest in property to secure payment of a debt or performance on an obligation which has not been avoided under the Bankruptcy Court or applicable state law.

### 3.1.43.    Notice of Default.

Notice to be transmitted to Debtor and its registered agent per the Texas Secretary of State via certified mail return receipt requested and First Class U.S. Mail.

### 3.1.44.    Petition Date.

April 1, 2019.

### 3.1.45.    Plan.

This Chapter 11 Plan of Reorganization, as may be amended or modified from time to time.

### 3.1.46.    Plan Ballot.

The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

### 3.1.47.    Plan Documents.

Any and all documents contemplated to be executed in connection with this Plan.

### 3.1.48.    Priority Claim.

Any Claim to the extent entitled to priority as provided in section 507(a) of the Bankruptcy Code.

### 3.1.49. Priority Non-Tax Claim.

Any Claim (other than an Administrative Claim or Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code including, but not limited to (a) Employee wage Claims for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred and eighty (180) days prior to the Petition, to the extent of $10,950 per employee; (b) Claims for contribution to an employee benefit plan as provided in section 507(a)(5) of the Bankruptcy Code; (c) Claims for deposits of up to $2,425 placed by consumers with the Debtor as provided in section 507(a)(7) of the Bankruptcy Code; (d) Claims based upon any commitment by the Debtor to a Federal depository institution regularly agency to maintain the capital of an insured depository institution as provided in section 507(a)(9); and (e) Claims for death and personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the Debtor was intoxicated from using alcohol, a drug, or another substance as set forth in section 507(a)(10).

### 3.1.50. Priority Tax Claim.

Any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code. A claim based upon an assessed *ad valorem* tax that is secured by a statutory lien on property that was administered during this Chapter 11 is a Secured Claim to the extent of the value of the property administered.

### 3.1.51. Pro Rata.

The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

### 3.1.52. Professional Fee Claims.

Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses, and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of a Professional Fee Claim.

### 3.1.53. Professional Fees.

All fees, costs, and expenses incurred in this Chapter 11 case by any professional person (within the meaning of sections 327, 328, or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to sections 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs, and expenses which have been allowed pursuant to this Plan or by Final Order by the Bankruptcy Court.

### 3.1.54. Protected Persons.

As defined in <u>Section 11.3</u> of this Plan.

### 3.1.55. Reorganized Debtor.

As of the Effective Date of the Plan, the Debtor as reorganized under the terms of the Plan.

### 3.1.56. Rights of Action.

Any avoidance, recovery, subordination, or other action of the Debtor, the Estate, or the Reorganized Debtor, any Cause of Action of the Debtor, the Estate, or Reorganized Debtor, or any objection to a Claim.

### 3.1.57. Schedules.

The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521 of the Bankruptcy Code.

### 3.1.58. Secured Claim.

A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, of any interest in property of the Estate securing such Claim, or any Claim to the extent that it is subject to setoff pursuant to section 533 of the Bankruptcy Code.  To the extent the value of such interest is less than the Claim amount, such Claim is a Deficiency Claim.

### 3.1.59. Subordinated Claim.

An Unsecured Clam that is subordinated pursuant to section 510 of the Bankruptcy Code or other applicable state law pursuant to a Final Order.

### 2.1.1.    Unsecured Claim.

A Claim not secured by a charge, mortgage, or lien against or interest in the Estate, including by not limited to any Deficiency Claim or any claim for damages resulting from rejection of an executory contract or lease.

### 3.2.    Unclassified Claims.

As required by the United States Bankruptcy Code ("Code"), the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interest is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.  Certain types of claims automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if in their view their treatment under the Plan does not comply with that required by the Code.

### 3.2.1    Administrative Claims.

Administrative expenses are costs or expenses of administrating the Debtor's Chapter 11 case which are allowed under 11 U.S.C. 507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article.  These unclassified Claims are treated as follows:

The United States Trustee fees will continue to be paid through the date this case is closed. Further, the Debtor shall file monthly operating reports through the date this case is closed.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|------------------------|---------------------|
| Professional Fees for Debtor's Counsel | $16,000.00[3] | Debtor proposes to pay the remaining Professional Fees on the Effective Date or by agreement with Debtor's counsel. |

### 3.2.2.   Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

3.2.2.1        **Class 1 – Secured Claims.**  Class 1 is comprised of the Allowed Claims Secured on Katy Commerce Center.

3.2.2.2.        **Class 2 –Small Business Administration Claims.**  Class 2 is comprised of the Allowed Claims held by the Small Business Administration.

3.2.2.3.        **Class 3 – Ad Valorem Tax Claims.**  Class 3 is comprised of the Allowed Ad Valorem Tax Claims, including Propel Financial Services, LLC against TADA.

3.2.2.4.        **Class 4 - Unsecured Priority Claims.**  Class 4 is comprised of the Allowed Unsecured Priority Claims against TADA .

3.2.2.5.        **Class 5 -  General Unsecured Claims.**  Class 5 is comprised of Allowed Unsecured General Unsecured Claims against TADA.

3.2.2.6.        **Class 6 - Subordinated Claims.**  Class 6 is comprised of all Allowed Subordinated Claims against TADA .

3.2.3.7.        **Class 7 - Equity Interest Holders.**  Class 7 is comprised of all Allowed Equity Interests in TADA .

## IV.     IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES

## 4.1.    Impaired Classes entitled to vote.

---

[3] Counsel for Debtor has not yet submitted a Fee Application but will file one shortly thereafter.

Only holders of Claims which are in impaired Classes may vote on the Plan. The following Classes of Claims and Interests are impaired and entitled to vote under the Plan:

### 4.1.1    Classes 4–Unsecured Priority Claims

### 4.1.2.   Classes 5 – General Unsecured Claims

### 4.2.    Unimpaired Classes & Classes not entitled to vote.

Holders of the Claims that are unimpaired are deemed to have accepted the proposed Plan and are not entitled to Vote on the Plan. The following classes are umimpaired and deemed to have accepted the proposed Plan: Classes 1, 2, and 3.

### 4.3.    Claim Controversies.

Should a controversy or dispute arise relating to the classification, impairment, or voting rights of any Creditor or Interest Holder under the Plan, prior to confirmation, the Bankruptcy Court may, after notice and a hearing, determine such controversy. The Bankruptcy Court may estimate, for voting purposes, the amount of any contingent or unliquidated claim, or fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 bankruptcy. The Bankruptcy court may conduct a valuation hearing pursuant to section 506(b) of the Bankruptcy Code to determine the Allowed Amount of any Secured Claim.

## V.    TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS

### 5.1.    Treatment of Unimpaired Classes of Claims.

Holders of the Claims that are unimpaired are deemed to have accepted the proposed Plan and are not entitled to Vote on the Plan. The following Classes of Claims are not impaired under this Plan and are deemed to accept the Plan:

**Classes 1, 2, and 3.** Holders of Allowed Claims in Classes 1, 2, and 3 shall receive on or before the Effective Date, the proceeds of the Collateral securing such Claimant's Allowed Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Claimant's Allowed Secured Claim.

### 5.2.    Treatment of Impaired Classes of Claims.

Holders of the Claims that are impaired and are entitled to Vote on the Plan. The following Classes of Claims are impaired under this Plan:

**Classes 4 and 5.** Holders of Allowed Claims in Classes 4 and 5 shall be paid in Cash their Allowed Claims within thirty days following the Effective Date. In the event of any failure of the Reorganized Debtor to timely make its required plan payments, which shall constitute an event of default under the Plan as to these Claimants, they shall send Notice of Default to the Reorganized Debtor. If the default is not cured within thirty (30) days of the date of such notice, the Holders of

Allowed Claims may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  The Claimants are only required to send two (2) notices of default, and upon the third event of default, the taxing authorities may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

All disputed Claims shall be treated in accordance with <u>Section XII</u> of this Plan.


## VI.    MEANS OF IMPLEMENTATION & RISKS ASSOCIATED WITH PLAN

### 6.1.    Source of Payments.

Payments and distributions under the Plan will be funded the sale of the Katy Commerce Center.  The Debtor has procured a buyer and contemplates closing on the sale of the Katy Commerce Center on or about December 31, 2019.  Attached as **Exhibit 2** is the proposed executed sale contract.


### 6.2.    Post-confirmation Management.

The Post-Confirmation Management of the Debtor will remain with Jean and Earl Stout.

### 6.3.    Risk Factors.

The Houston, Texas real estate market is volatile, and Debtor may be unable to close on the sale of the Katy Commerce Center in order to pay all claims of the estate.


### 6.4.    Tax Consequences of Plan.

**Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

#### 6.4.1.    Taxation Generally.

This discussion is for informational purposes and does not constitute tax advice.  The federal income tax consequence of implementation of the Plan to a holder of a Claim will depend on (i) whether the Claim constitutes a debt or security for federal income tax purposes, (ii) whether the holder of the Claim receives consideration in more than one tax year, (ii) whether the holder of the Claim is a resident of the United States, (iv) whether the consideration received by the holder of the Claim is part of an integrated transaction, (v) whether the holder of the Claim utilizes an accrual or cash method of accounting, and (iv) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The federal, state, and foreign tax consequences of the Plan are complex and in many areas, uncertain, therefore you are urged to consult a Tax Professional.  The Estate of the Debtor may incur a capital gain or loss due to the implementation of the Plan.  The Debtor will not recognize

any income to the extent of forgiveness of debt under this Plan

## VII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

Debtor assumes the lease agreement with LANs of Texas, Inc. and rejects all other executory contracts.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## VIII.   CAUSES OF ACTION

### 8.1.   Preferences.

Pursuant to the Bankruptcy Code, the Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of the petition with respect to pre-existing debts, to the extend the transferee received more than it would have in respect to the pre-existing debt had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code.  In the case of "insiders," the Bankruptcy Code provides for a one-year look back preference period.  There are certain defenses these actions such as transfers made in the ordinary course of the Debtor's business.  Additionally, a defense may exist if the transferee extended credit after the transfer.

### 8.2.   Fraudulent Transfers.

Under the Bankruptcy Code and state law, TADA may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered it insolvent.  TADA has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  All avoidance actions and rights pursuant to sections 506(c), 510, 542, 544, 545, 549 of the Bankruptcy Code.

## IX.  CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in § 1129(a) or (b) of the Code.  These include the requirements that: the Plan must be proposed in good faith; at least one

impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requires are not the only requirements listed in § 1129, and they are not only the requirements of confirmation.

A. <u>Who May Vote or Object.</u>

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements of confirmation are not met.  Any insider's vote will not be counted.

Many parties in interest, however, are not entitled to vote or accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if the creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

1. *What is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

2. *What is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is NOT Entitled to Vote.*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- Holders of claims and equity interests that have been disallowed by an order of the court;
- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- Holders of claims or equity interests of unimpaired classes;
- Holders of claims entitled to priority pursuant to § 507(a)(2) and (a)(8) of the Code;
- Holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- Administrative expenses.

***Even if you are not entitled to vote on the Plan, you have the right to object to confirmation of the Plan and to the adequacy of the Disclosure Statement.***

    4.   *Who can vote in more than one class.*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    B.  <u>Votes Necessary to Confirm the Plan.</u>

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in <u>Section XIII</u> of the Disclosure Statement.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements of consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

    C.  <u>Liquidation Analysis.</u>

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

Notwithstanding any provision in this plan to the contrary, TADA commits to make payments of a value not less than required by the preceding paragraph.

    D.  <u>Feasibility.</u>

The Court must find that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

    1.   *Availability to initially fund Plan.*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  If not, Debtor intends to enter into an agreement with the administrative claimants for deferred payments.

      *2.  Ability to make future plan payments and operate without further reorganization.*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

Debtor's means for implementation of its Plan is derived from its anticipated income from future operations until the sale of its principal asset, the Katy Commerce Center.

***You should consult with your accountant or other financial advisors if you have any questions pertaining to these projections.***

## X.  VOTING PROCEDURES

### 10.1  Ballots and Deadline to Vote.

A ballot to be used to vote to accept or reject the Plan is enclosed with this Disclosure Statement and a creditor entitled to vote must (i) carefully review the ballot and instructions, ii) complete and execute the ballot, (iii) return the executed ballot to the address indicated by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has ordered that in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor no later than _____, 2019 at 5:00 p.m.

### 10.2.  Creditors Entitled to Vote.

Any Creditor whose Claim is impaired under the Plan is entitled to vote if the claim is (i) not scheduled as disputed, contingent or unliquidated, or (ii) the proof of claim was filed before the last date set by the Bankruptcy Court for filing Proofs of Claims and no objection has been filed to the Claim.

Holders of Disputed Claims are not entitled to vote on the Plan.  Any Claim to which an objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor holding the Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan.

Classes of Claims that are not impaired are deemed to have accepted the Plan per section 1126(f) of the Bankruptcy Code and are not entitled to vote.  Only classes of claims or interests that are "impaired" are entitled to vote on a plan; generally, a claim is impaired under a plan of

reorganization if the plan alters the legal, equitable, or contractual rights to which the holder of such claim is entitled.

**10.3.   Vote Required for Accepting Classes.**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests of the class, who vote, casts their votes to accept the Plan.

**10.4.   Cramdown and Withdrawal of the Plan.**

The Debtor reserves the right to withdraw the Plan if the Plan is not accepted by all classes of impaired Creditors.  If the Plan is accepted by one or more Classes of impaired Creditors, the Debtor reserves the right to request the Bankruptcy Court to approve the Plan per section 1129(b) of the Bankruptcy Code.

## XI.   EFFECT OF CONFIRMATION OF THE PLAN

**11.1.   Discharge of Debtor, Injunction, and Vesting of Property of the Estate.**

Upon confirmation of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code and all of the property of the estate shall vest in the Debtor. The Debtor shall not be discharged from any debt imposed by the Plan.  After the effective date of the Plan your claims against the Debtor will be limited to the debts imposed by the Plan.

Except as expressly provided in the Plan or Confirmation Order, all persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined on or after the Effective Date from (i) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, or its property, with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property with respect to such claim, (iv) asserting any right of subrogation of any kind against any objection due to the Debtor or its property with respect to any such claim, and (v) asserting any right of setoff or recoupment against the Debtor kind against the Debtor.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to section 106, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

**11.2.    Modification of Plan.**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.  The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

**11.3.    Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

**11.4.    Legally Binding Effect.**

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan.  On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**11.5.    Limited Protection of Certain Parties.**

Neither (a) the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtor or (b) each Professional of the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them (hereinafter, collectively the "Protected Parties"), shall have or incur any liability to any person or entity under any theory of liability for any act or omission occurring on or before the Petition Date in connection with or related to the Debtor, or the Debtor's estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including solicitation of acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release, or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Parties shall be entitled to rely on good faith upon the advice of counsel. In any action, suit or proceeding by any person contesting any action or non-action by any Protected Party as constituting willful misconduct, gross negligence or *ultra vires* activity, or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in  the event they fail to prevail.

**11.6.    Anti-Discrimination Provisions of Bankruptcy Code.**

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Debtor or another person with whom the Debtor has been or are associated or affiliated solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor.

**11.7.    Preservation of Claims and Rights.**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation specifically and unambiguously provide so.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**11.8.    Retention of Jurisdiction by Bankruptcy Court.**

The Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent as provided by law for the following purposes subsequent to Confirmation of the Debtor's Plan: (i) to determine any and all objections to the allowance and classification of Claims or Interests; (ii) to determine the validity and priority of any Lien; (iii) to determine the Allowed Amount of any Claim, whether secured or unsecured; (iv) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to determine any and all applications or motions pending before the Court on the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to issue orders in aid of the execution and implementation of the Plan and Confirmation Order; and (ix) to hear and determine matters concerning federal or local taxes.

## XII.    CONFIRMATION OF THE PLAN

**12.1    Confirmation Hearing.**

11 U.S.C. § 1129(a) requires the Bankruptcy Court to hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  The Confirmation Hearing has been scheduled for _____ 2019 at ___:___ ___.m. before the Honorable David R. Jones in courtroom 400, 515

Rusk, Houston, Texas, 77002.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan; however, an impaired Creditor, who votes to accept the plan, may not have standing to object to the Plan.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and the Local Rules of the Bankruptcy Court.  The deadline for filing objections to confirmation of the Plan is _____ p.m. on _____, 2019.  Objections to confirmation must be filed with the Clerk of the Court.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**12.2.    Statutory Requirements for Confirmation of the Plan.**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event, the Bankruptcy Court will enter an order confirming the Plan.  As provided in section 1129 of the Bankruptcy, the statutory requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.
2.    The Plan proponent complies with the applicable provisions of the Bankruptcy Code.
3.    The Plan has been proposed in good faith and not by any means forbidden by law.
4.    Any payment made or to be made by the Plan proponent, or by any person issuing securities or property under the Plan, for services or for costs and expenses in, or in connection with the cases, or in connection with the Plan and incident to the cases, has been approved by, or is subject to the approval of, the Court as reasonable.
5.    The Plan proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as director, officer, or voting trustee of the Debtor.
6.    Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor, has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.
7.    With respect to each class of impaired claims or equity interests:
    a.   Each holder of a claim or interest of such class:
        i.    has accepted the Plan; or
        ii.   will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Plan Proponent were liquidated under Chapter 7 of the Bankruptcy Code on such date; or
    b.   if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date, that is not less than the value of such holder's interest in the estate's interest in the property that secures that claim.
8.    With respect to each class of class of claims or interests:
    a.   Such class has accepted the Plan; or
    b.   Such class is not impaired under the Plan

9.  Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

a.  With respect to a claim of a kind specified in section 507(a)(1) or section 507(a)(2) of the Bankruptcy Code, on the Effective Date, the holder of such claim will receive on account of such claim cash equal to t he allowed amount of such claim;

b.  With respect to a class of claims of a kind specified in sections 507(a)(3), 507(a)(4), 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive:

i.  If such class has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; or

ii.  If such class has not accepted the Plan, cash on the Effective Date equal to the allowed amount of such claim; and

c.  With respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the Effective Date, equal to the allowed amount of such claim.

10.  If a class is impaired under the Plan, at least one class of claims that is impaired has accepted the Plan, determined without including any acceptances of the Plan by any insider.

11.  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the plan proponent or any successor to the plan proponent under the Plan, unless such liquidation or reorganization is proposed in the Plan.

TADA believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

Additionally, TADA  believes that the holders of Impaired Claims under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in the amounts not less than what would be received if TADA  were to be liquidated under Chapter 7 of the Bankruptcy Code.

## XIII.  CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS

### 13.1  Objection Process.

Unless otherwise provided by the Bankruptcy Court, the Debtor shall file and serve all objections to Claims and Equity Interests the later of (i) ninety (90) days after the Effective Date; (ii) the date on which a proof of claim, proof of interest, or request for payment is filed with the Bankruptcy Court; or (iii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**13.2    Filing of Claims and Causes of Action.**

Debtor reserves the exclusive right to prosecute any and all Claims and Causes of Action of the Debtor and the Estate.

**13.3    Disputed Claim Reserve.**

A Disputed Claims Reserve shall be established by the Debtor for treatment of Disputed Claims and held in a separate bank account from all other funds.  Debtor will deposit into the Disputed Claims Reserve an amount equal to the Pro Rata share of Distribution allocable to such Disputed Claims, in accordance with the distributions as provided for in the Plan, as if such Claims were Allowed Claims pending a determination of their entitled under the terms of the Plan.  Once the Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Debtor is authorized to pay the Allowed Amount of such Claim from the Disputed Claim Reserve.

**13.4    Distribution to Holders of Disputed Claims.**

Within twenty (20) Business Days after a Disputed Claim is deemed an Allowed Claim , any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  In the event that the Disputed Claim is disallowed in its entirety or reduced in portion, the disallowed or reduced portion of the shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims without further approval.

**13.5    Disallowance of Late Filed Proofs of Claims.**

Except as otherwise provided in the Plan, any proof of claim filed after the Bar Date is hereby disallowed.

**13.6    Distribution Process.**

**13.6.1  Record Date for Claims.**

Record date for Distributions to Allowed Claims under this Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement and Debtor will rely on the claims docket maintain by the Clerk for proof of claims filed in this case.

**13.7.1    Distributions to Holders of Allowed Claims.**

Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or the last known address if no proof of claim was filed, unless Debtor received written notification of a change in address.  If the holder's Distribution is returned undeliverable, it will be treated as a disallowed Disputed Claim as provided in Section 8.4.

**13.8.1    Unclaimed Distributions.**

Debtor will file a notice of undeliverable Distribution with the Bankruptcy Court within thirty (30) days of the returned Distribution.  All claims for undeliverable Distributions must be made no later than forty-five (45) days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims per Section 2.4 and

the remaining Claim of the holder of the undeliverable Distribution will be discharged and forever barred.

### 13.9.1     Undeposited Checks.

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance.  Distributions with respect to un-negotiated checks will treated per <u>Section 2.4</u> and the remaining Claim of the holder of the unnegotiated check will be discharged and forever barred.


## XIV.   CRAM DOWN.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.  Per section 1129(b)(2) of the Bankruptcy Code, "fair and equitable" can be demonstrated by the following treatment:

1.  With respect to a class of secured claims, the Plan provides:
    a.  (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Plan Proponent or transferred to another entity, to the extent of the allowed amount of such claims; and
    (ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such  holder's interest in the estate's interest in the property;
    b.  For the sale, subject to § 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or
    c.  For the realization by such holders of the indubitable equivalent of such claims.
2.  With respect to a class of unsecured claims, the Plan provides
    a.  That each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or
    b.  The holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest in any property.
3.  With respect to a class of interests, the Plan provides:
    a.  That each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

    b.   The holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property.

The Debtor believes that the Bankruptcy Court will find at the Confirmation Hearing that the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.

## XV.    GENERAL PROVISIONS

### 15.1.    Bar Date and Objections to Administrative Claims.

No Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail.  Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtor shall have no liability for payment of any such Administrative Claim.

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the twenty-first (21st) day following the date on which the application was filed.  Any objections will be considered by the Bankruptcy Court.

### 15.2.    Professional Claims.

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, unless otherwise provided for in the Plan, or if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, within thirty (30) days after Bankruptcy Court approval of the Professional Fee.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within thirty (30) days of the Effective Date and such applications and objections thereto shall be filed in accordance with and comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules.

### 15.3.    United States Trustee Fees.

Within thirty (30) days of the date that such payments are due, the Debtor shall pay all amounts owed to the United States Trustee as fees and costs imposed in connection with this Chapter 11 case.

### 15.4.    Amendment of the Plan.

The Plan may be amended or modified by the Debtor after the Effective Date as provided in section 1127 of the Bankruptcy Code.

**15.5.    Reservation of Claims.**

The Debtor reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, to any and all Claims and Causes of Action for relief that the Debtor may have against any director, officer, any insurer under any insurance policy, or any other person or entity. Entry of the Confirmation Order shall not constitute *res judicata* or any bar, estoppel, or inhibit any actions by the Debtor relating to any Claims or Causes of Action.

**15.6.    Calculation of Dates.**

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referred to in the Plan.

**15.7.    Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law.

**15.8.    Conflict.**

Except as provided for in the Plan, to the extent there are any inconsistencies between the Confirmation Order and the Plan and Disclosure Statement, any other agreement entered into by the Debtor and any third parties, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

**15.9.    Setoffs.**

The Debtor may but shall not be required to set off against any Claims and payments to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature that the Estate may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor of any such claims it may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Debtor.

**15.10.   Alternative Means to Confirmation.**

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders.  If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11.

**15.11.   Alternative Plans of Reorganization.**

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans.  However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets.  Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

## 15.12.  Liquidation under Chapter 7.

The Debtor does not believe that liquidation under Chapter 7 would be in the best interest of the creditors and the conversion of the case to a case under Chapter 7 would result in the loss of the going concern value of the Debtor as well as the additional administrative expenses attributable to the statutory trustee fees and professional fees for the trustee's professionals.  In a Chapter 7 liquidation, the Debtor believe that all of the proceeds would go to ECapital Loan Fund II, LP and the Small Business Administration and no other creditors would receive payment.

Dated: November 21, 2019

By:  */s/Jean Stout*
      Manager
      TADA Ventures , LLC

**CORRAL TRAN SINGH, LLP**

By:  */s/Susan Tran Adams*
      Adam Corral | TBN: 24080404
      Susan Tran | TBN: 24075648
      Brendon Singh | TBN: 24075646
      1010 Lamar, Suite 1160
      Houston TX 77002
      Ph: (832) 975-7300
      Fax: (832) 975-7301
      Susan.Tran@ctsattorneys.com

**ATTORNEYS FOR TADA VENTURES , LLC**